Our final case for this morning is United States v. David A. Resnick, and we'll begin with Mr. Sachs. Good morning, Your Honors. May it please the Court, Joshua Sachs representing David A. Resnick on this appeal from his criminal conviction. I'd like to focus and really just put before the Court three of my major thoughts, one or two on each of the claims that we've advanced on this appeal. First of all, regarding the firearm count, the first claim we raised in the appeal, I think this is not an argument about credibility. We disagree with the government. This is an argument about sufficiency of the evidence. I'm suggesting that we should accept as credible true finding, if you will, everything that Tony, the witness Tony, said about the firearm, slightly less relevant what Officer Kohler had to say, everything that the four or five It's all a given. The evidence that David Resnick brandished a firearm is still insufficient. There was only one person who was present at the time of the brandishing. There is other evidence that he had a gun, though. On other occasions. There's no question that Mr. Somebody who said they saw a gun, didn't the other boy involved say that he saw a gun? On another occasion. Yeah. That's right. Mr. Resnick has had firearms on other occasions. No question about it. But you know, let me just jump in because I think where Judge Bauer's going, this is a case where there are a number of pieces of evidence that add up to the ability to find that on this occasion, there was a gun that Tony perceived. I mean, you would agree, I'm sure that if there was a gun and it happened to be under, you know, a piece of cloth, but the person could feel it, then we know that there's a gun there. Tony sees the glint of metal. He describes in fairly good detail what the gun looked like. He knew that Mr. Resnick had a gun and that taken together with the kind of evidence that this is a man who typically had a gun with him, you know, guns were around, and that Tony is behaving as though there's a gun being brandished. It's just pieces of evidence. He doesn't actually see the whole gun in front of him because, of course, the guy's talking to a trooper. He's not going to do that, but he sees the glint. I think we can, I do not dispute that Tony believed that there was a gun. Maybe he thought he believed it. Maybe he was just afraid there was, but let's assume Tony believed when he was sitting in the car that there was a gun. And then there's other circumstantial evidence that his belief is correct. But the point is, that's not what he said. He said his testimony was that although he thought there was a gun, he didn't know. And the question is, was there a gun? Not did David Resnick have a gun at another time, not did he produce a gun in that truck on some other occasion. Did he brandish a firearm at Tony? Tony says, I think he did, but I really don't know. He says pretty sure. I mean, he's not sure what kind of gun it is. And he doesn't, he doesn't see a hundred percent of the gun, but he says, and the jury can evaluate this when asked the question, are you sure it was a gun? He says, pretty sure, ma'am. And so the jury can decide whether it wants to take that as a, you know, a kid saying, yes, I did, or as, gee, I don't know. I think you have stronger arguments. You want to move on a little bit? I certainly do, your Honor. I think we've covered what I, what I have to say there. As far as the matter of Kyle's testimony about another sexual incident, I want to caution the court against going off on what I think is a side issue of worrying about whether there is a disagreement between this circuit and the ninth circuit as to whether there is. You don't have to worry about that. We will accept the fact that we disagree with the ninth circuit on a regular basis. The point, the point is, though, the real question is, Judge Moody, the district judge, clearly believed that there is a presumption of admissibility as far as sexual evidence. He says so in so many words. He only says it once, and he actually then very carefully looks at the scope of Rule 414. He does a careful balancing under 403 as he's supposed to do, which is what our Rogers decision said. I thought he, he walked through it. Aside from this one mistaken reference to a presumption, 414 says the evidence is admissible. Evidence may be admitted, you know, obviously subject to the other rules of evidence, particularly 403, but Judge Moody goes through the 403 analysis. Judge Moody went through the 403 analysis, and it wasn't a bad analysis. He was familiar with the Laugry case, or however one pronounces it, some other cases. The problem is that although, yes, he did go through a 403 analysis, that analysis was tainted by his incorrect belief that in the balance there is a presumption of admissibility. That's the problem I have. That's why I think that although he did do a 403 analysis, it was a tainted 403 analysis, and that's really what I have to say about, with one other point. The worry in the Rogers case, and I think it's a real worry here, is whether the admission of that evidence, which is relevant for propensity, may have a tendency to loot the burden of proof. In other words, what we're worried about is the jury maybe has its doubts about Tony. Obviously, it's the jury questions, but he's got a cell phone. He never complains. He's out walking. He's away from David. He's out walking with the dog. He never complains. These things can be explained, but there are reasons why the jury might have its doubts about Tony. Maybe it doesn't matter so much about Tony. This fellow is guilty. That's what we're worried about. That's just the propensity inference, which 414 allows in this kind of cases. It's not that propensity evidence is irrelevant. It's that it's almost too relevant, so under the regular 404B, it's kept away, but 414, Congress decided to reverse that, let it come in for whatever it's worth, subject to 403, and the district court, whose decision we review, by the way, for abuse of discretion only, balances under 403. I certainly am not the one to tell this court what Rogers means. Go ahead and tell us. It was my understanding of Rogers, and perhaps I'm mistaken, that this court, while recognizing that the 414 allows the propensity... The question before this court is whether or not the evidence was admitted appropriately. Its effect on the jury, however, is none of our damn business, and we can't inquire of a jury as to whether it had any effect, but we do know whether it should have gone in or not have gone in, according to the way we feel. Am I correct in my analysis? Absolutely correct, Your Honor, and I think in that context, there's a... Rogers, as I had understood it, indicates that, and maybe it's considered a matter of confusion of the evidence, that that's different from propensity, and that problem still even once the propensity issue is solved. It's no perfect way of doing it. Anything else? One other thing, Your Honor. I want to talk very briefly about the polygraph issue. Well, don't be very briefly in that. I think that's the sore point of the case, but go ahead. Well, Your Honor, the problem... I think this is very, very, very troubling evidence that it came in. There was no reason that I can understand why the polygraph should have been interjected into the case by the government at all. Mr. Resnick could have been... The issues of Mr. Resnick's credibility in his statement to the officers could have been introduced with that chart that the prosecutor was writing for the jury. But we're on plain error review here, right? Yes, we are, because there was no objection, and for what it's worth, if this is the factor we consider in plain error review, we don't know why there was no objection. I can only speculate that once the cat was out of the bag, there was nothing for counsel to do but try to put the best face on it as possible, come up with some sort of a response. We don't want to make a big issue, but for whatever reason, with all respect... Since it is... Let me cut to the chase. The government, among other things, makes a harmless error, and actually with plain error review, you've got to show prejudice somehow. There was a lot of other evidence in this case. How much of an effect would this polygraph evidence have had? For the same reasons that there's some question about Tony's credibility to the point it's clearly a jury issue. Yes, there was other evidence relating to credibility, but this polygraph business, what I really... I suppose what's really troubling about it is the testimony, well, I want to talk to my attorney before I decide what to do about a polygraph. Then they bring out, well, you found out that he did talk to his attorney, didn't you? Yes, but he still didn't take the polygraph. I see two ways a jury can take that. One is he talked to the attorney, but he didn't tell the attorney some facts about the case, hid things from the attorney. The other possibility is he told the attorney, and the attorney said, don't go near the polygraph. And what I'm afraid of is that that kind of... Not sound advice, by the way. I'm sorry. I say it's sound advice. I agree, but I agree it's sound advice, Your Honor. There's a different issue involved, but go ahead. Your Honors, and I understand the limits of the polygraph and why we don't... You're into your rebuttal time. A jury doesn't understand that. You're into your rebuttal time. Your Honor, I think I've really said what I have to say. If there are any questions, otherwise, I'll wait for my rebuttal. Okay. Thank you, Your Honors. Mr. McGrath. May it please the court, Tom McGrath for the United States. Mr. McGrath, my track record in this area is fairly clear, and I would like to know if you have a single case which says that the results of a polygraph can be admitted into evidence, just as this fact was, that the guy said he would take it if he had taken it and flunked. Could you have gotten that evidence in? I believe that this court has said the results of a polygraph... No, no. You tell me that you have a case that says that if a man flunks a lie test, the government can put that into evidence in its case in chief. I don't know if I have the case that says that. I bet you don't, because there is no such thing. Right. If you have no right to have the thing entered, why do you have a right to discuss the fact that he refused to take the polygraph? Well, we believe that it goes to consciousness of guilt. It may be to the consciousness of guilt. Maybe running away is a consciousness of guilt, but he was just galloping on. If he has a right to do what he's doing, he has a right to refuse the polygraph, does he not? Yes. Then why are you given the right to comment on his exercise of his constitutional right? You can't do it if he doesn't confess. You can't say he refused to tell us. You can't do it. He wouldn't take the stand himself. You can't do that. Why can you do this? I don't think this implicates the Fifth Amendment right here. Well, why not? Because he said, he didn't say, I'm not going to answer that question. No, he said, I'm not going to take the polygraph. Right. After he had made a very... Well, until I talked to my lawyer, but whatever he said, he said he didn't want to take the polygraph. Why does the government have the right to discuss that? I think as the court had... I understand what Judge Moody said, that it was consciousness of guilt. That is not a reason for admitting inadmissible evidence. Well, I guess I would disagree with the idea that this is a Fifth Amendment right here, because he didn't say, I won't answer that question. He didn't implicate his Fifth Amendment. Ignore the Fifth Amendment. Just start with this. If you have to warn him, he has no right. He doesn't have to talk to anybody. And if he wants a lawyer, he'll get one. If you can't mention the fact that after you've given that evidence, the guy didn't say anything, it's a consciousness of guilt, you would say. Why can't you enter that too? He has a right not to take the polygraph test. And he said he was exercising that right until he talked to his lawyer. And not only did you put that in, you put in that after he talked to his lawyer, he still wouldn't take the test. Well, our position was that he could have said, I'm no longer going to speak to you. I don't want to speak to you until I take the test. Do you have any support, legal support, and I leave out the Ninth Circuit, to support that position? I would say that the position from the Ellington case that we brought in... From what? The Ellington case that we brought in was not Seventh Circuit, but it was Northern District with Judge Kendall, who... Give me... I'm very fond of Judge Kendall. And that and Nicola by a small piece of candy. But I want you to know, I cannot find a single case where a refusal to take the lie test, and with whatever caveat as it did, was admitted into evidence and approved by any court of appeals or Supreme Court. And I'd agree with you. And I think both counsel had a hard time going outside of all circuits to find cases on point here. The reason you didn't find any is because it's not admissible. No, it's because many jurisdictions say that you can't go into anything about polygraphs, unlike this jurisdiction. Well... Why isn't this analogous to an impermissible comment on the defendant's invocation of his right to remain silent? Because... By analogy. I recognize that this circuit doesn't have a rule for or against polygraph evidence, but he's essentially saying, I'm not saying anything further, and I'm not taking a polygraph until I talk to my lawyer. And then he talks to his lawyer, and he declines the polygraph. And there was repeat evidence on this through the case agent, and then comment on it during closing argument. What we saw this as was someone who gave up their Fifth Amendment right, volunteered answers. Well, right, but he can always stop the interrogation at any time, and you can't comment on his reasons for doing that. I agree that he could stop it at any time. But he didn't say, I don't want to answer that question. He didn't say, I don't want to go into that area. What do you mean he said, I don't want to answer that? He didn't want to answer any of the questions in the polygraph. It's like a set of questions he said, I don't want to answer. Well, we didn't set up a polygraph, and then he said, I'm not going to take it. He's asked if you want. In essence, though, he knows polygraphs involve asking questions, and he's saying, I'm not going to answer those questions. It's a form of interrogation and a truth-telling measure that is strongly disfavored and in effect, I mean, banned in many jurisdictions. Well, and what we went off was this when it came in, that there's nothing in this jurisdiction that says you can't do it. I guess I disagree that it's a impermissible comment. Let's take another comment. Do you know of any case that says that the results of a polygraph can be introduced into evidence because it's reliable? I believe that I don't have the case answer for you, but I can tell you that in this jurisdiction, other jurisdictions, they have said that this is all within the discretion of the court. Now, if the court had no belief that a district court could ever allow this in, then there would be a per se rule against it. Well, you found a case which said that the admissibility of a polygraph result is up to the judge? We have found cases like U.S. v. DINGA from this court, 609 F3D 904, that says the court gives district courts great latitude in deciding whether to admit or exclude evidence relating to polygraphs.  The judge denied our ability to go into polygraph on both sides, but the court has never said you can't do that. What you're looking for now is a court to say something on a subject, and we will. Well, I think what we're trying to say is that when the district court hears this for the first time, there's nothing with this court that says that you can't do this, then it can't be plain error. This court has said that if there's no clear evidence from the district court, then there's no chance of making it plain error. If you're saying this is a matter of first impression with this court... I don't think it's a matter of first impression. It's a matter of first impression raised the way you did it. Well, it can't be a matter of first impression. I mean, as I said, it's been allowed in for consciousness of guilt before. Almost always it's a discussion whether the trial court should go into discussion this before, and then it's preserved for review. But nobody, not one single case ever said that the question of whether or not you can say he refused to take a polygraph test until he talked to his lawyer and refrained, refused again afterwards, and then said it was by consciousness of guilt. Well, first I would make something clear on this case, that the government never brought up the attorney in this case. That was brought up by the defense during cross-examination. So if we're going into that part of it... Well, was it used in final argument? It was used in final argument. It was used for the position that when he first said, I'm going to refuse to take the polygraph because I want a lawyer, that itself was a deception. That he had never, ever any intention of doing it. That he was just saying, I want to look like I'm cooperating. I want to talk to a lawyer. And he never would have taken it at any time. That's why we brought it in. Clever way of getting around the program. Well, I think we have to look at it from that plain error standard. And I want to make sure that we're clear on that. That there's nothing there that says that it couldn't be brought in. And then once we hit plain error in this case, we have the evidence of Tony who came in very credibly and talked very clearly about his abuse. We have the evidence of Kyle who came in very clearly and said, I was also abused. We have 60 hours of his collection of this type of abuse for children that he had on him at the time. I'm not defending anything he did. I understand. What I'm talking about is what you want us to do is to enter a case order from this court, which approves the idea of telling the jury that he refused to take a lie test until he talked to his lawyer. And then he still refused to take a lie test. That that's perfectly appropriate to give that to a jury in a case in chief. That's what you want us to do. I don't think you have to reach that. But I think that if we had defended this to the district court, this is the argument we would have made. We would have made that it shows consciousness of guilt, especially in cases. How would we be able to say that it was all right for you to do this without taking the position that it is appropriate for the trial court to bring evidence of refusal to take a lie test into evidence in the case in chief for showing consciousness of guilt? How would we frame it other than that? On a plain error review? On any review. On plain error review, you could go saying that only... That was error, but we could say that's error, but it didn't make any difference here. I believe you can. I believe with the overwhelming evidence, you have to get to a place where a miscarriage of justice would have taken place if this didn't take place. With all the overwhelming evidence, I don't think you get there. I do think that this court could say, as they did in the Ellington case, that there are situations where for consciousness of guilt, this can be brought in. I realize that's not... If we had a case involving Miranda versus Arizona and the court refused or permitted the comment on... Or he didn't get the Miranda warning, but it was harmless error because the evidence was so overwhelming, would that be appropriate? Your Honor, I think that would be a very different situation than this situation. How? Because without giving the Miranda warnings, then the person didn't know his rights before he went into everything. This person was given his rights, told you don't have to comment on anything, and then simply asked that question. In this case, he has the right. We all know this, and he knows. He doesn't have to take the lie test. He doesn't have to take the lie test, but the fact that he doesn't have to take the lie test isn't the constitutional right. Well, well... We can't force him. It's a distinction without a difference. I'm trying to figure out why you should be able to comment on a man exercising his constitutional rights. Say this was a voice exemplar, that you had someone on a wire, and then they said, okay, well, we want to... Will you let us record your voice so we can compare that and go forward? Or a handwriting exemplar. Well, you don't have to. And he says no. You can get a handwriting or a voice exemplar, ask him for a grand jury. I've done it thousands of times. Well, no, hundreds of times. But that's the analogy I'm trying to make, that it's not that different than saying, let's get some comparison. Let's get a fingerprint comparison and do this. Those are things you do involuntarily or involuntarily. I'm not saying about the reliability, but I'm saying about the question of, will you let us check? Will your fingerprints be on this? The problem I have with your reliability argument is that you have to establish the reliability of a polygraph before you can make an argument that this demonstrates consciousness of guilt. Otherwise, we're just in sort of pop culture TV crime lab universe and not the real universe where we actually have standards. Well, I guess my argument then would be at least one other judge has thought that it was OK without doing that. Because in the Ellington case, they didn't go into any of that. They just said that someone saying that they didn't want to take it because they feel they were going to fail was consciousness of guilt. So my point would be that it can't be plain error if the judge didn't bring this up when no one else had brought it up. And then even if you get beyond plain error, we have that there's overwhelming evidence on these counts. So it should not be considered plain error because it was not a miscarriage of justice. If the refusal to take a polygraph is routinely admissible on consciousness of guilt, then the police will ask every suspect to take a polygraph. I wouldn't say that would be routinely admissible. I think you have to go through every process you have to do. You have to do the 401 and the 403. Now, Judge Moody may very well have said that this is too prejudicial and wouldn't have allowed us to go into it. He wasn't given the opportunity to do that and we didn't have the opportunity to explain why it wasn't prejudicial. But I think if this was shown as it has been in the past that it's within the discretion of the court when it's brought to the court's attention, we'll go through that 403 analysis and the court may say, no, you're not going to go anywhere near that. But because nothing was brought up, there was no opportunity to get that on the record in this case. If there are any questions on any of the other issues, otherwise, we will rest on our briefs. Thank you. All right. Thank you, Mr. McGrath. Anything further, Mr. Sachs? No, I think we all understand. You should go up to the microphone if you're going to talk. I think we all understand what's before the court. If there are any questions, I'll be happy to address them. Thank you, Your Honor. All right. Thank you. Thanks to both counsel. We will take the case under advisement and we will be in recess. Thank you.